[Crim. No. 766. Second Appellate District, Division Two.—October 6, 1921.]

## THE PEOPLE, Respondent, v. DOMINICO GAYS, Appellant.

[1] CRIMINAL LAW—MURDER OF PEACE OFFICER—PROBABLE CAUSE FOR MAKING ARREST—EVIDENCE—INSTRUCTIONS.—In this prosecution for the murder of a peace officer, in view of the evidence showing that just prior to the murder a burglary had been committed, that the deceased and other officers were on the lookout for the burglars, that because of the defendant's actions suspicions were directed toward him, that the defendant knew he was dealing with a peace officer, and that the defendant shot the deceased when the latter was placing him under arrest and severely wounded another officer, the trial court did not commit error in refusing to instruct the jury that "the evidence shows as a matter of law that the officers had not probable cause to believe, nor reasonable ground for suspicion that a felony had been committed by the defendant."

[2] ID. — RELATIVE LOCATION OF PARTIES — EVIDENCE — EXPERT TESTIMONY.—In a prosecution for murder, where the jury have before them, in ordinary lay language, a description of the course of the bullets after they entered the body of the deceased and other evidence from which they can determine the relative positions of the parties when the shots were fired, it is not error to deny the defendant permission to introduce expert testimony to prove that fact.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank R. Willis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ernest M. Torchia and Charles Matthews for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

WORKS, J.—Defendant appeals from a judgment of conviction of murder in the first degree and from an order denying his motion for a new trial. The victim of appellant was a deputy marshal of Burbank. That officer informed his superior, the marshal, at about 12 o'clock at night, that he had seen a large automobile running through the streets of the little town without lights. This was at a time when the officers were on the lookout for the perpetrators of a burglary, a place of business in the town recently having been entered. The deceased, acting under instructions from his superior, enlisted the aid of a constable in his search for the car and the two finally located it and came up to it. According to the graphic story of the constable, who was himself severely wounded in the affray which followed, some conversation took place between the officers and the occupants of the car, during which the latter were commanded to put up their hands; whereupon the deputy went toward appellant, who was seated in the rear of the car, remarking, "Here is the man I want, right here." He then stepped on the running-board of the car, pulled down appellant's left hand and handcuffed it. With his disengaged hand, and by means of a weapon taken from some hiding place in the car, appellant then shot the deputy marshal to death.

[1] Appellant contends that the trial court erred in refusing to instruct the jury that "the evidence shows as a matter of law that the officers had not probable cause to believe, nor reasonable ground for suspicion that a felony had been committed by the defendant." In presenting this instruction to the trial court we assume, although counsel do not quite say so in their brief, that it was the defendant's theory, having the alleged burglary in mind, that the officers had no right to arrest defendant, without a warrant, unless they had reasonable cause for believing that he had committed a felony (Pen. Code, sec. 836, subd. 3). Following this premise counsel must also believe—their brief, however, not disclosing such a view—that the degree

of appellant's crime was lessened, or that he was altogether guiltless of crime, if the officers were engaged in an attempt, at the time of the shooting, to encompass his arrest unlawfully. Passing this latter point as being unnecessary to decide, we take up the question whether the facts developed at the trial were such that it became the duty of the court to instruct the jury in accordance with defendant's request. Counsel contend that there is nothing in the record tending to show that the officers had reasonable cause to believe, nor reasonable ground for suspicion, that appellant had committed a felony, and that, perforce, the court was bound to give the requested instruction. But counsel's statement as to the condition of the record cannot be justified. The evidence shows that a burglary had been committed in Burbank shortly before the shooting of the deputy marshal, although the time elapsing between the two events does not appear; that at the time of the shooting the deputy and the constable were engaged in an endeavor to apprehend the burglars, the deputy having pursued that labor alone for some time previously; that the deputy had reported to the marshal and had told the constable that a car was being driven about the town without lights; that the car in which appellant was when the arrest was attempted had no lights when first seen by the constable, and that, in effect, that car answered the description of the car mentioned by the deputy in his report to his superior and in what he told the constable; that the deputy said to the constable that the men in the car had been following him for about three hours and had been keeping track of him and that he had once tried to stop the car, but that it had driven on; that, just before the car was finally overhauled and the arrest attempted, the constable saw appellant out of the car, standing at a street intersection, and that he started to run when he saw the constable approaching; that the constable then called out to the deputy, "Their watchman is on the next corner"; that before attempting to arrest appellant the deputy exclaimed, "Here is the man I want, right here"; that at the time of the attempted arrest and probably during the entire period through which the car and its occupants were under observation by him, the deputy wore on the outside of his coat a gold-plated police badge, the identical object being exhibited to the trial court; that he

carried a police billy in his hand, and that, therefore, the occupants of the car knew, while they were "keeping track of him" and when they refused to stop at his summons, that they were dealing with a peace officer; and that appellant's assault upon the deputy followed immediately upon the attempted arrest of the former, that it was relentless, bloodthirsty, and murderous and of a character not likely to have been resorted to except under a fear of serious consequences to follow upon the arrest. Under these circumstances we are convinced that the court was justified in refusing to give the requested instruction. It will be observed that, in the above statement of the evidence bearing on this question, we have referred several times to matters which were communicated by the deputy to his superior and to the constable. The lips of the deputy were sealed in death simultaneously with his attempt to arrest appellant, and it can never be known what particular reason he had, beyond what the foregoing recital discloses, for believing that the occupants of the car, and appellant particularly, were guilty of the burglary. Up to the time when he called upon the constable to assist him, he was endeavoring alone to unravel that mystery, and what he had discovered no man may know. Notwithstanding the fact that his statements were not made under oath, they were made in and about the immediate discharge of his duty as an officer, they are in the record without objection, and the court may well have considered them in passing upon the requested instruction. If, however, this position were not warranted, there is yet enough in the record to justify the court's action. The fact that appellant ran when seen at the street intersection by the constable, the fact that he knew he was dealing with peace officers, the character of his attack upon the deputy, and the fact that the constable himself was seriously wounded either by appellant or by another member of his party, probably the latter,—all these speak volumes upon the question we now consider. The court committed no error in refusing the instruction.

In passing upon this point we have not found it necessary to determine whether the officers had the right to arrest appellant, seated, as he was, in the rear seat of the car and not driving it, for an offense committed in their presence (Pen. Code, sec. 836, subd. 1), because of the fact

that the car occupied by the men at the time was on a public highway without lights (State Motor Vehicle Act, as amended, sec. 13, Stats. 1919, p. 206; Deering's 1917–19 Supp. to Gen. Laws, p. 1493; sec. 32, Stats. 1919, p. 225; Deering's Supp., p. 1512). The question naturally suggests itself.

[2] While on the witness-stand for the prosecution the county autopsy surgeon testified to a result of his examination of the body of the deceased deputy marshal as follows: "One bullet entered his back three inches below the right armpit and two inches internal to the external axillary line. This bullet penetrated the right lung, glanced upward at an angle of about fifteen degrees, penetrating the superior *vena cava* of the left lung, struck the upper part of the chest cavity, and I found the bullet lying loose in the left pleural cavity." As a part of appellant's defense, with a surgeon on the stand, the above answer of the autopsy surgeon was read to the witness and he was asked, "Now, Doctor, from that description of the wound, what is your opinion as to the different position—that is, the position of the person who was wounded and the person who fired the shot, what it must have been at the time in order to cause a wound of that character?" The question was objected to on the ground that it was not a question for expert testimony. The objection was sustained and the ruling is assigned as error. If the question was one proper to be addressed to an expert, a point concerning which we express no opinion, it was so merely because of the technical language of the autopsy surgeon, for, if the jury had before them a description of the course of the bullet in ordinary lay language, they could have determined from that description and from the other evidence in the case bearing on the subject—and there was much of it—what the relative positions of the two men were when the shot was fired. And they did have such a description from the autopsy surgeon himself on his cross-examination by appellant's counsel. On that examination he responded fully to this question: "Now, Doctor, will you please illustrate by using Mr. Matthews as a subject, associated with me, . . . and illustrate just the course of those bullets, just the place where the bullets entered and where you found the bullets?" The ruling of the court on the objection was therefore proper.

Three other points are made by appellant, but one of them is answered in what we have said concerning the question we have first considered above and the other two do not merit a specific consideration.

Judgment and order affirmed.

Finlayson, P. J., and Craig, J., concurred.